[Cite as *State v. Caldwell*, 2013-Ohio-5017.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99166**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## WARREN CALDWELL

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-555552

**BEFORE:** S. Gallagher, P.J., Kilbane, J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** November 14, 2013

**ATTORNEY FOR APPELLANT**

Russell S. Bensing
1350 Standard Building
1370 Ontario Street
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY:   Ronni Ducoff
      John D. Toth
Assistant Prosecuting Attorneys
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

SEAN C. GALLAGHER, P.J.:

{¶1} Defendant-appellant, Warren Caldwell, appeals his rape and kidnapping convictions. For the reasons stated herein, we affirm in part, reverse in part, and remand the matter to the trial court with instructions.

{¶2} In a 30-count indictment, Caldwell was charged with 12 counts of kidnapping, with sexual motivation and sexually violent predator specifications,[1] and six counts of rape, with sexually violent predator specifications. These charges included Count 12, which alleged that the victim was less than 13 years of age and that Caldwell purposely compelled her to submit by force or threat of force, during an incident that allegedly occurred between February 8, 2008, and June 15, 2008. The indictment further charged Caldwell with two counts of attempted rape, nine counts of gross sexual imposition, and one count of disseminating material harmful to juveniles in Count 28. Caldwell pled not guilty, and the matter proceeded to a jury trial on March 14, 2012. The state dismissed two counts of rape and one count of attempted rape.

---

[1] The indictment charged defendant with 12 counts of kidnapping with sexual motivations and sexually violent predator specifications in Counts 1, 3, 5, 7, 10, 13, 15, 18, 21, 24, 26, and 29. He was also charged with six counts of rape with sexually violent predator specifications in Counts 11, 12, 16, 17, 22, and 23. The indictment further charged defendant on two counts of attempted rape in Counts 19 and 20, and nine counts of gross sexual imposition in counts 2, 4, 6, 8, 9, 14, 25, 27, and 30. He was also charged with one count of disseminating material harmful to juveniles in Count 28.

{¶3} The morning of the second day of trial, the attorneys and the court discussed the possibility of a plea to "one or more child endangering charges." The trial court rejected the proposed plea, stating the following:

> He is accused of some terrible crimes here. And he either did them or did not do them.
>
> If he did not do them, he should be exonerated by an appropriate verdict; if he did do them, he should be appropriately sanctioned upon a guilty verdict.
>
> I find it hard to believe that there is some middle ground here, where he would deny committing rapes and gross sexual impositions and kidnapping, yet he would admit to having endangered [the victim].
>
> I haven't heard evidence or a summary of evidence that would support his having endangered her, other than by, if he did it, having raped or otherwise sexually abused her.
>
> If you want further expansion of my thoughts * * * you might want to look at [State v. Frazier, Cuyahoga C.P. No. CR-549274 (Apr. 19, 2012)].
>
> So I'm not inclined then, to accept a plea bargain, because I don't think that plea bargain would be in the interest of justice, as I understand it.

{¶4} In the afternoon of the second day of trial, following a portion of the victim's testimony, the attorneys again informed the court that they had reached a plea agreement in which Caldwell would plead guilty to two counts of importuning and two counts of abduction. In addition to the reasons "mentioned earlier," the court rejected the second plea agreement, stating it believed the plea agreement was "not in the interest of justice" and was "inherently coercive." The trial court indicated as follows:

So we began a jury trial, and now, having heard some evidence, which, let's be honest, if credited by this jury, may result in a guilty verdict, he proposes pleading guilty to certain third-degree felonies.

I believe that to be inherently coercive.

It would not be if he had agreed to a similar proposal prior to trial, but now we're in a situation where he has heard some damaging evidence, but he hasn't heard or seen * * * that evidence which may tend to favor him.

So I don't see how Mr. Caldwell can plead guilty to anything from jaywalking on up to anything less than the crimes charged at this moment, I'm not talking about before trial, at this moment, without it being to some degree coercive.

And so I mention that, and I'll just reiterate what I said before, which is that if the testimony we've heard is true beyond a reasonable doubt, then the State is entitled to have Mr. Caldwell found guilty of something worse than importuning or abduction.

If, however, the testimony is not true beyond a reasonable doubt, Mr. Caldwell is entitled to walk out of here and never think about this case again.

And that summarizes my other reason for not believing that such a plea is in the interest of justice.

{¶5} In further discussions on the record, the trial court reiterated its all-or-nothing viewpoint for rejecting the plea, stating as follows:

[H]aving heard * * * some evidence * * *, it occurs to me that there are really two possible results.

One just result is that Mr. Caldwell be found not guilty of all charges and be done with this case entirely, as I mentioned earlier.

Another just result is that Mr. Caldwell be found guilty, at a minimum, because we've just heard the testimony to support it, of rape of a child, I think she said she was ten at the time. * * *

So he either did nothing, or nothing criminal, and should be acquitted, or he did something which our legislature has characterized as one of the worst crimes one can commit, and he should be then treated accordingly.

I'm not sure I see the middle ground.

**{¶6}** The court further indicated that even assuming an appropriate inquiry into the plea was made, it would still decline to accept the plea as not in the interest of justice. The prosecutor proceeded to express that trials are works in progress and to express her concerns over the weaknesses in the case and the need to convince the 12 jurors to agree with the victim. The trial court was not persuaded, and the trial proceeded.

**{¶7}** Following the state's case, Caldwell motioned for acquittal pursuant to Crim.R. 29, which the court granted as to six counts. Following the presentation of Caldwell's evidence, the jury returned guilty verdicts on Count 7 (kidnapping with sexual motivation and sexual predator specifications), and Count 12 (rape of a victim under 13 years old with force and a sexually violent predator specification). The jury acquitted Caldwell of all the remaining charges.

**{¶8}** Following the merger of the offenses, the court sentenced Caldwell to 25 years to life in prison, in accordance with R.C. 2907.02 and 2971.03. Caldwell subsequently filed a motion for a new trial and a motion to enforce the plea agreement offered by the state. The trial court denied both motions, and this appeal followed.

**{¶9}** Caldwell raises four assignments of error for our review. In his first assignment of error, Caldwell argues the trial court erred in refusing to accept the second

plea agreement he made with the state in the afternoon of the second day of trial, wherein he agreed to plead guilty to two counts of importuning and two counts of abduction.

{¶10} It is well settled that the trial court enjoys wide discretion in deciding whether to accept or reject a negotiated plea agreement. *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.E.2d 427 (1971); *Akron v. Ragsdale*, 61 Ohio App.2d 107, 121, 399 N.E.2d 119 (9th Dist.1978). Indeed, a defendant has no absolute right to have a guilty plea accepted. *Santobello* at 262; *Lafler v. Cooper*, 556 U.S. 1___, 132 S.Ct. 1376, 1395, 182 L.Ed.2d 398 (2012).

{¶11} However, the court's discretion is not without limits. For example, a trial court abuses its discretion when it rejects a plea agreement by relying on a blanket policy rather than considering the facts and circumstances of the particular case. *State v. Fitzgerald*, 188 Ohio App.3d 701, 2010-Ohio-3721, 936 N.E.2d 585, ¶ 11 (8th Dist.). A blanket policy rejecting plea agreements results in rejections based on policy rather than reason.

{¶12} A court's discretion may be exercised erroneously if the court fails to give reasons for its decisions and its reasons are not apparent from the record. "A decision rejecting a plea bargain should be accompanied by the trial court's reasons therefor, absent facts and circumstances otherwise appearing which permit an evaluation of the decision." *Ragsdale* at paragraph two of the syllabus.

**{¶13}** In this case, the court provided two reasons for rejecting the plea agreement. It stated that the plea agreement would not serve the interest of justice and was inherently coercive. In rejecting the second plea agreement, the court stated:

> So he either did nothing, or nothing criminal, and should be acquitted, or he did something which our legislature has characterized as one of the worst crimes one can commit, and he should be then treated accordingly. I'm not sure I see the middle ground.
>
> * * *
>
> In this case, if Mr. Caldwell has caused injury to [the victim], that injury is based on the testimony we've just heard, at a minimum, rape.
>
> Why, then, is it justice that he receive a consequence of whatever sentence he might get for importuning or abduction?
>
> By the same token, if he hasn't done this, which by his not guilty plea he asserted that he hasn't, how is it fair that he be convicted of four third-degree felonies and have to report as a sex offender for 15 years?
>
> So, in my opinion, the proposed plea bargain does not comport with the interest of justice.

**{¶14}** The trial court's reasoning would preclude virtually every plea bargain as being against the "interest of justice" because every plea bargain involves the defendant pleading to something less than he is charged with, but more than his not guilty plea admits. In the trial court's mind, the "interest of justice" required Caldwell to go through trial and live with the verdict. He would either be convicted of the charges, if found guilty, or acquitted, if found not guilty. In the court's mind, there was "no middle ground."

{¶15} Although there is no evidence the trial court had a blanket policy rejecting all pleas after the commencement of trial, the court's rationale became a de facto policy of rejecting any plea offered in this case because it provided no principled reason justifying its all-or-nothing approach. Had the court articulated some objective reason by which we could review its exercise of discretion, we might have found no abuse of discretion.

{¶16} The trial court referenced its prior decision in *Frazier*, Cuyahoga C.P. No. CR-549274, as part of its rationale for rejecting the first plea agreement. In *Frazier*, the court rejected a plea because the evidence could not support the proposed charge. The defendant had been charged with two counts of rape and one count of kidnapping. Both sides agreed the defendant would plead guilty to abduction and the two rape counts would be dismissed. In rejecting the plea agreement the court stated in *Frazier*:

> Justice here demands either that the defendant be convicted of a sex offense or nothing because the evidence cannot support a conviction for kidnapping or abduction without a conviction of a sex offense. Similarly, the court is not bound to put its imprimatur on a plea bargain by accepting the defendant's guilty plea where it is inconsistent with any reasonable jury's possible decision on the issues of fact.

{¶17} In *Frazier*, the court provided a reason for rejecting the plea agreement, i.e., the evidence could not support a kidnapping or abduction conviction without a sex conviction. In this case, the trial court failed to state any material reason for rejecting the plea agreement. Furthermore, the plea agreement in this case included two counts of importuning, which are sex offenses, and two counts of abduction. Count 20 of the indictment was later amended to charge importuning to conform to the evidence. Thus,

after hearing all the evidence, the trial court concluded that a jury could determine that a conviction for importuning was a possible outcome of trial. And the two proposed abduction counts are lesser included offenses of kidnapping. Therefore, *Frazier* is inconsistent with the facts of this case and fails to shed any light on the court's rationale.

{¶18} This case should not be read as a movement away from the longstanding and well-settled principle that a trial judge enjoys wide discretion in deciding whether to accept or reject a negotiated plea agreement. Nevertheless, where the decision to reject a plea is characterized in an "all-or-nothing" approach, that approach is suspect absent some objective rationale or apparent facts in the record that support the trial court's decision. While the trial judge in this case is a well-seasoned and respected jurist, the rationale offered on the record and the reference to *Frazier* were flawed.

{¶19} It is important to note that the plea discussions in this case began prior to trial, and the parties indicated to the court there was agreement with the proposed plea bargain. The prosecutor conceded the records from Berea Children's Home changed the complexity of the case and that no one but Caldwell and the victim really knew the truth. Indeed, the victim had previously recanted accusations that her uncle molested her. The prosecutor's argument in favor of the plea agreement illustrates why a plea agreement would have better served the interest of justice in this case:

> But that's what I'm trying to get you to understand, Your Honor. She could be telling the truth, and no one here knows besides those two people.

> She could be telling the absolute truth, but when 12 people have to make a decision about whether she was raped or not, if 12 people say,

"There's no medical evidence here, I'm not signing the verdict form," and because there's no medical evidence, he's acquitted, is that justice? Not if he really raped her.

So here is our remedy for him to stand up before you and say, "Okay, I'm willing to take on the onerous task of registering. I'm admitting to these [agreed upon] offenses."

That's why I'm saying, I have a different opinion than you about where's the justice.

I can't guarantee you that just because she said it happened, that 12 people are going to agree with her. And if they say not guilty to rape, that's not justice if it really happened.

That's * * * the occupational hazard of these cases, that you can't always prove them. That doesn't mean it didn't happen.

And this is not a legal fiction. You're finding — you're having a defendant stand before you and tell you, "I'm admitting to what she said happened."

* * *

And that's why the State is saying * * * it is in the interest of justice.

{¶20} The role of a prosecutor in the plea-bargaining process should not be marginalized. Prosecutors have an inherent duty to seek justice, all the while representing the interest of the victim and the community as a whole. In offering a plea deal, prosecutors may also consider the extent of harm caused by the offense, possible improper motives of a complainant, reluctance of a victim to testify, and cooperation of the accused in the apprehension and conviction of others.

**{¶21}** In addition, prosecutors must at times make difficult decisions regarding the viability of their evidence, especially at the moment of trial. The importance of this process cannot be understated. Just as a trial judge may have concerns about "the interests of justice" a prosecutor must likewise be concerned that a potentially guilty party may go free and escape some level of responsibility. A valid plea bargain is the state's protection to ensure some level of accountability and responsibility is established for wrongful conduct. Admittedly, this is "negotiated justice" that is often far from the pure or righteous doctrines of idyllic justice.

**{¶22}** In *Lafler*, 132 S.Ct. 1376, 1381, 182 L.Ed.2d 398, Justice Kennedy noted that "criminal justice today is for the most part a system of pleas, not a system of trials. Ninety-seven percent of federal convictions and ninety-four percent of state convictions are the result of guilty pleas." *See also Missouri v. Frye*, 566 U.S. 1___, 132 S.Ct. 1399, 1407, 182 L.Ed.2d 379 (2012). In such a system, prosecutors must invariably make hard decisions that must be afforded respectful consideration by the trial judge in deciding whether to accept or reject a plea, and where a prosecutor's assessment is rejected, it should be done with a valid objective. While this may well have been the trial court's view, its all-or-nothing analysis did not afford an objective basis for rejecting the prosecutor's concerns with the case and the proposed plea agreement.

**{¶23}** Here, the trial prosecutor was an experienced and dedicated professional who does not have a reputation of "giving the courthouse away" in the parlance of plea negotiations. While trial judges retain the inherent right to reject a plea, where a

prosecutor, as here, lays out a viable rationale for offering and recommending a plea, the trial court's decision to reject that plea should at least objectively address why the court has rejected the prosecutor's analysis. Just as courts enjoy judicial discretion, prosecutorial discretion is a prerogative of the executive branch of government. *See Wayte v. United States*, 470 U.S. 598, 607, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985); *State ex rel. Murr v. Meyer*, 34 Ohio St.3d 46, 516 N.E.2d 234 (1987); Crim.R. 48. Therefore, while the trial court may reject a plea, in doing so, it "must provide a reasoned exercise of discretion in order to justify a departure from the course agreed on by the prosecution and defense." *United States v. Maddox*, 48 F.3d 555, 556 (D.C.Cir.1995); *see also Santobello*, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.E.2d 427. It is clear from the record that this seasoned prosecutor had evaluated the strengths and weaknesses of the case based both on the facts of the case and her practical experience thus determining the proposed plea would be just.

{¶24} The trial court also stated it was rejecting the plea agreement because it was "inherently coercive." However, the court made no inquiry into Caldwell's reasons for accepting the plea agreement. Defendants enter into plea agreements after calculating the risk of trial based on the available evidence. They also consider the ramifications of the plea. After making such calculations, some defendants knowingly, intelligently, and voluntarily plead guilty even while maintaining their innocence because they conclude it would best serve their own interests. *North Carolina v. Alford*, 400 U.S. 25, 36-37, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

**{¶25}** Caldwell's trial lawyer, who had a duty to counsel him regarding his understanding of the plea agreement and its ramifications, assured the court that Caldwell was in fact making the plea knowingly, intelligently, and voluntarily. The trial court found an inquiry with regard to the plea unnecessary, stating it would still decline to accept the plea as not in the interest of justice.

**{¶26}** Therefore, we find the trial court abused its discretion in rejecting the plea agreement in this case, and the first assignment of error is sustained. Having determined that the court erred in rejecting the plea agreement, the second assignment of error is moot.

**{¶27}** In his third assignment of error, Caldwell claims the trial court erred in allowing evidence of other acts and in allowing hearsay evidence.

**{¶28}** We review the admission of evidence under an abuse of discretion standard. *State v. Driggins*, 8th Dist. Cuyahoga No. 98073, 2012-Ohio-5287, ¶ 59, citing *State v. Maurer*, 15 Ohio St.3d 239, 473 N.E.2d 768 (1984). An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶29}** Caldwell complains that the trial court erred in admitting testimony from Officer Steven Reitz. Officer Reitz's testimony concerned his response to a domestic dispute involving Caldwell and the victim's mother, with whom Caldwell shared a residence. Over a hearsay objection, Officer Reitz testified to statements made by the victim's mother about being choked by Caldwell and to the officer's observations of the

victim's neck being red. He also testified to Caldwell's statements denying the assault. None of the testimony offered by Officer Reitz pertained to the minor victim in this case.

{¶30} In *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, the Ohio Supreme Court concluded that Evid.R. 404(B) is in accord with R.C. 2945.59 in that it precludes the admission of evidence of other crimes, wrongs, or acts offered to prove the character of an accused in order to show that the accused acted in conformity therewith, but does not preclude admission of that evidence for other purposes, e.g., to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Further, while testimony concerning police investigations is generally admissible, the testimony must be relevant and its probative value must not be substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Evid.R. 403(A). *See State v. Bailey,* 8th Dist. Cuyahoga No. 81498, 2003-Ohio-1834*,* ¶ 25-26.

{¶31} In this instance, prior to accepting testimony from Officer Reitz, the trial judge instructed the jury that the testimony was being offered to explain the officer's actions.

> [I]n this particular case, it's the Court's opinion that the remarks of [the victim's mother] that this officer is about to relay are being offered here not for their truth, but to show why he did what he did; in other words, to explain his actions.

Tr. 390.

{¶32} Our review of the record reflects that Officer Reitz's testimony, which pertained to an offense of domestic violence involving the victim's mother, was irrelevant

to the charges in this case and was presented for the purpose of proving Caldwell's bad character and criminal propensity. We therefore conclude that the trial court's ruling contravened Evid.R. 404(B), and the trial court erred in permitting the introduction of this testimony.

{¶33}  Under Crim.R. 52(A), we may disregard an error not affecting a substantial right of the accused.  In light of the substantial testimony concerning the charges against Caldwell and because there is no reasonable possibility that Officer Reitz's testimony contributed to Caldwell's conviction, the court's error is rendered harmless beyond a reasonable doubt.

{¶34} Defendant next complains that the trial court erred in admitting testimony from Pamela Ralston, a middle school guidance counselor.  Ralston testified that the minor victim told her Caldwell had inappropriately touched her.  Ralston provided further details of what the victim told her.  The counselor's testimony was cumulative to testimony of the victim and other witnesses in the case.  Further, after the victim testified, the counselor could have been recalled to provide testimony to rebut an express or implied charge of recent fabrication or improper influence or motive under Evid.R. 801(D)(1)(b).  Therefore, even assuming that the counselor's testimony qualified as hearsay, we find that her testimony was harmless.  Crim.R. 52(A).

{¶35} Defendant also complains that the trial court erred in introducing certain testimony of Dr. Mark Feingold about domestic violence, neglect, and alcohol problems in the victim's home.  Dr. Feingold indicated that these risk factors correlate with

abusive injuries to children. In *State v. Ervin*, 8th Dist. Cuyahoga No. 80473, 2002-Ohio-4093, ¶ 17, this court noted that Dr. Feingold treated and diagnosed the victim at the Alpha Clinic following her allegations of sexual abuse and rape, and held that his testimony was properly admitted under Evid.R. 803(4). *Accord State v. Hilton*, 8th Dist. Cuyahoga No. 89220, 2008-Ohio-3010. Likewise, in this case, because the statements were made for purposes of medical diagnosis and treatment, they were properly admitted under Evid.R. 803(4). Even if we were to find the statements were inadmissible, we find any error would have been harmless. Crim.R. 52(A).

{¶36} In accordance with all of the foregoing, the third assignment of error is without merit.

{¶37} In his fourth assignment of error, Caldwell claims the trial court erred in imposing postrelease controls upon him. Defendant asserts that because he was convicted of rape and received an indefinite sentence of 25 years of imprisonment to life, the trial court erred in imposing a term of postrelease control.

{¶38} R.C. 2967.28 provides:

(B) Each sentence to a prison term for a felony of the first degree, for a felony of the second degree, for a felony sex offense, or for a felony of the third degree that is an offense of violence and is not a felony sex offense shall include a requirement that the offender be subject to a period of post-release control imposed by the parole board after the offender's release from imprisonment. * * *

   (1) For a felony of the first degree or for a felony sex offense, five years;

   * * *

(F)(4) Any period of post-release control shall commence upon an offender's actual release from prison. If an offender is serving an indefinite prison term or a life sentence in addition to a stated prison term, the offender shall serve the period of post-release control in the following manner:

(a) If a period of post-release control is imposed upon the offender and if the offender also is subject to a period of parole under a life sentence or an indefinite sentence, and if the period of post-release control ends prior to the period of parole, the offender shall be supervised on parole.  * * *

(b) If a period of post-release control is imposed upon the offender and if the offender also is subject to a period of parole under an indefinite sentence, and if the period of parole ends prior to the period of post-release control, the offender shall be supervised on post-release control.  * * *

{¶39} In *State ex rel. Carnail v. McCormick*, 126 Ohio St.3d 124, 2010-Ohio-2671, 931 N.E.2d 110, the Ohio Supreme Court concluded that postrelease control must be imposed upon a defendant who receives an indefinite sentence of life in prison with parole eligibility for a conviction of rape in violation of R.C. 2907.02, which is both a felony of the first degree and a felony sex offense.  In rejecting the contention that postrelease control was not necessary, the Ohio Supreme Court stated:

Although it could be implied from [R.C. 2967.28(F)] that postrelease control is unnecessary for indefinite or life sentences, there is no specific language in either this or other provisions that modifies the express language in R.C. 2967.28(B)(1) requiring postrelease control.  That is, R.C. 2967.28(B)(1) is not expressly limited to definite sentences; instead, it applies broadly to "[e]ach sentence to a prison term for a felony of the first

degree * * * [or] for a felony sex offense." Because R.C. 2967.28(B)(1) is phrased in broad, sweeping language, we must accord it broad, sweeping application. See *State ex rel. Mager v. State Teachers Retirement Sys. of Ohio*, 123 Ohio St.3d 195, 2009-Ohio-4908, 915 N.E.2d 320, ¶ 16.

*McCormick* at ¶ 20; *accord State v. Falkenstein*, 8th Dist. Cuyahoga No. 96659, 2011-Ohio-5188; *State v. Cottrell*, 8th Dist. Cuyahoga No. 97629, 2012-Ohio-2634.

{¶40} Here, defendant was sentenced for rape in violation of R.C. 2907.02(A)(1)(b), which is both a first-degree felony and a sex offense, so five years of postrelease control is mandatory in accordance with R.C. 2967.28(B)(1). The court sentenced defendant to an indefinite term of imprisonment pursuant to R.C. 2971.03(B), but there is no specific language in either this or other provisions that modifies the express language in R.C. 2967.28(B)(1) requiring postrelease control for the first-degree felony convictions. *McCormick*. Therefore, the trial court did not err in imposing five years of postrelease control sanctions. The fourth assignment of error is without merit.

{¶41} Finally, we must address the remedy, under the limited circumstances of this case, for the trial court's failure to accept the second plea agreement. Caldwell should be afforded the opportunity to enter a plea in accordance with the terms of the second plea agreement. However, he is not entitled to an opportunity for a new trial should he fail to enter a plea of guilty because the court's error had no adverse impact upon the trial and Caldwell was convicted and sentenced after receiving a fair trial.

**{¶42}** "A new trial is not the appropriate remedy since the violation did not impact the fairness of the trial" and, but for the error, "the most the petitioner could have done would have been to accept the plea offer." *Williams v. Maryland*, 326 Md. 367, 605 A.2d 103, 111 (1992) (remanding the matter for the petitioner to enter a guilty plea pursuant to the plea offer with instructions that the judge reinstate the original convictions and sentence if the petitioner declined to enter a guilty plea); *see also United States v. Hernandez-Limon*, 134 F.3d 745 (9th Cir.1994) (reversing district court's refusal to take a guilty plea and remanding with instructions to allow the defendant to enter a guilty plea pursuant to a plea agreement or else the convictions would be reinstated).

**{¶43}** Accordingly, we reverse the trial court's decision to reject the second plea agreement. Upon remand, vacating the conviction is contingent upon Caldwell agreeing to enter a plea according to the terms of the second plea agreement. We instruct the trial court to hold a hearing at which Caldwell shall be offered the opportunity to knowingly, intelligently, and voluntarily agree to the second plea agreement. Upon agreement, the trial court shall vacate the conviction and, following compliance with Crim.R. 11, Caldwell may enter his plea. If Caldwell enters a guilty plea, the court shall proceed directly to sentencing. Should Caldwell fail to enter a plea of guilty pursuant to the plea agreement, the trial court shall reinstate Caldwell's original conviction and sentence.

**{¶44}** Judgment affirmed in part, reversed in part; cause remanded with instructions.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

SEAN C. GALLAGHER, PRESIDING JUDGE

EILEEN T. GALLAGHER, J., CONCURS;
MARY EILEEN KILBANE, J., DISSENTS WITH SEPARATE OPINION
MARY EILEEN KILBANE, J., DISSENTING:

{¶45} I respectfully dissent. I would conclude that the trial court acted within its discretion in rejecting the proposed pleas that were offered mid trial.

{¶46} It is well settled that the decision to accept or reject a plea bargain rests solely within the discretion of the trial court. *State v. Arde*, 190 Ohio App.3d 196, 2010-Ohio-5274, 941 N.E.2d 119, ¶ 18 (2d Dist.); *State v. Howard,* 2d Dist. Greene No. 2012-CA-39, 2013-Ohio-2343. The trial court is the final arbiter of whether the plea should be accepted. *Ragsdale*, 61 Ohio App.2d 107, 109, 399 N.E.2d 119. The court is not obligated to follow the negotiated plea entered into between the state and the defendant, and it is not required to defer to the prosecutor. *Id.* An appellate court generally reviews a trial court's rejection of a plea agreement under an abuse of discretion standard. *State v. Keyes*, 4th Dist. Meigs No. 05CA16, 2006-Ohio-5032, ¶ 8. It is the prerogative of the trial court to accept or reject a proposed plea and, from its impartial

vantage point, the court has ability to view the proposed plea in light of the charges and anticipated evidence. The court then determines, within the exercise of its discretion, whether it advances the interest of justice and whether it comports with a reasonably anticipated outcome.

{¶47} In this matter, the defendant was indicted on October 20, 2011. Over the next six months, the trial court held six pretrials and two motion hearings before the March 13, 2012 jury trial. After the jury was empaneled and sworn, on the third day of trial on the morning of March 15, 2012, the state and defense counsel informed the court that they had a proposed plea. At that point, four witnesses had already testified for the state, including a police officer, a school guidance counselor, a county social worker, and one of the victim's friends from school. The defendant faced 12 counts of kidnapping with sexual motivation and sexually violent predator specifications; six counts of rape, including one count alleging that the victim was less than 13 years of age and that the defendant purposely compelled her to submit by force or threat of force; two counts of attempted rape; nine counts of gross sexual imposition; and one count of disseminating material harmful to juveniles. The parties informed the court that the defendant had agreed to plead guilty to "one or more child endangering charges."

{¶48} The trial court stated:

The written record should reflect that earlier today off the record the lawyers and the Court discussed the possibility of a plea bargain wherein Mr. Caldwell would plead guilty to one or more child endangering charges in violation of Revised Code Section 2919.22, and it wasn't really determined or explained to the Court exactly which section, but it would be child endangering.

> The Court having renewed its acquaintance with that statute in the meantime and the Court having considered the circumstances, it's likely to decline to accept that plea, if it were forthcoming.
>
> The reason for that is that it has very much to me the error of expediency.
>
> Mr. Caldwell is presumed innocent. He is accused of some terrible crimes here. And he either did them or did not do them.
>
> If he did not do them, he should be exonerated by an appropriate verdict; if he did do them, he should be appropriately sanctioned upon a guilty verdict.
>
> I find it hard to believe that there is some middle ground here, where he would deny committing rapes and gross sexual impositions and kidnapping, yet he would admit to having endangered [B.W.].
>
> I haven't heard evidence or a summary of evidence that would support his having endangered her, other than by, if he did it, having raped or otherwise sexually abused her.

**{¶49}** The trial court cited to and incorporated its previous remarks in *Frazier*, Cuyahoga C.P. No. CR-549274. In that case, the defendant was charged with two counts of rape and one count of kidnapping, and the parties anticipated that the evidence would show that the parties were dating and had exchanged text messages. Prior to trial, the parties proposed to the court that defendant would plead guilty to the lesser charge of abduction and the rape charges would be dismissed. In rejecting the proposed plea, the court noted that the state was advocating for a plea that appeared to be inconsistent with the anticipated evidence and did not comport with any foreseeable outcome. Four months later, however, following additional pretrials in the matter, the court did permit

the defendant to plead guilty to one count of gross sexual imposition, a charge more in keeping with the original charges.

{¶50} The trial court also explained to the parties that, although it would not involve itself in their further plea negotiations, they could continue such negotiations. The court stated:

> You can certainly — if the parties reach a proposed plea bargain, you're certainly welcome to present it to the Court and I will consider it.
>
> This particular plea bargain, though, that you have presented to me is not one that I believe would be in the interest of justice.
>
> So if you have further conversations, those probably should be outside of my presence.

{¶51} Trial in this matter continued and the victim testified as to various incidents of abuse. Later in the afternoon on March 15, 2012, following the victim's testimony, the state and defense counsel again informed the court that the defendant had agreed to plead guilty to a second proposed plea agreement. Under this proposed plea, the defendant agreed to plead guilty to two counts of importuning and two counts of abduction. The trial court declined to accept the plea and cited to its denial of the previous plea offer. The trial court also stated that a kind of brinkmanship had occurred in the negotiating that had rendered the plea inherently coercive.

> [T]his kind of brinksmanship [sic], negotiating seems to me to be inherently coercive, which is to say, how can this plea be truly voluntary under the circumstances of the plea?
>
> * * * [H]aving heard some of the evidence, which, let's be honest, if credited by this jury, may result in a guilty verdict, he proposes pleading guilty to certain third-degree felonies.

I believe that to be inherently coercive.

It would not be if he had agreed to a similar proposal prior to trial, but now we're in a situation where he has heard some damaging evidence, but he hasn't heard or seen presented that evidence which may tend to favor him.

So I don't see how Mr. Caldwell can plead guilty to anything from jaywalking on up to anything less than the crimes charged at this moment * * *, without it being to some degree coercive.

* * * [I]f the testimony we've heard is true beyond a reasonable doubt, then the State is entitled to have Mr. Caldwell found guilty of something worse than importuning or abduction.

If, however, the testimony is not true beyond a reasonable doubt, Mr. Caldwell is entitled to walk out of here and never think about this case again.

* * * [S]uch a plea is not in the interest of justice.

* * * I stipulate to the good faith and capable ethical advocacy

of both lawyers, so I don't fault or criticize

either lawyer for offering this proposal. I'm

just telling you that my belief is what I've just

told you.

* * *

* * * I'm not — it's not a policy. All I'm telling you is that based on everything I know about the current state of affairs in this case, the proposed plea is not in the interest of justice.

I believe that it's within the discretion of a trial judge to accept or reject a

plea as being within or not within the interest of justice.

{¶52} Therefore, although it may have been an abuse of discretion for the trial court to deny the proposed pleas prior to trial, I would find no abuse of discretion in connection with the denial of both proposed mid-trial pleas. The trial court specifically stated on the record that it was not acting pursuant to a "policy" of denying any plea offered during trial. The court further showed that the ruling was not made pursuant to a policy because after the first proposed plea was rejected, the court invited the state and defense counsel to present another proposed plea. Therefore, there is no basis for concluding that the court acted pursuant to a de facto policy. Rather, the trial court gave cogent and reasoned analysis for its rulings.

{¶53} At the time of the first proposed plea, the jury was already empaneled and sworn, and four of the state's witnesses had testified. There was no mention of any plea negotiations until after the jury had been empaneled and sworn, and the matter was now in the third day of trial, March 15, 2012. At that time, the court stated that "earlier today off the record the lawyers and the Court discussed the possibility of a plea bargain wherein Mr. Caldwell would plead guilty to one or more child endangering charges[.]" The court then stopped the trial and allowed the state and the defense attorney to put forth their reasons and arguments in favor of the first proposal. The court ultimately determined, however, that the proposed plea to child endangering had the defect of "expediency," since it was not clear what relation this offense bore to the charges and evidence, and that the plea was not in the interest of justice.

{¶54} By the time of the second proposed plea, the victim had completed her testimony. The trial court again stopped the trial proceedings and again heard from the state and defense counsel, but the court concluded, after thoughtful discernment, that a type of brinkmanship had occurred and that, under the circumstances, the proposed plea was coercive.

{¶55} Moreover, with regard for judicial economy, convenience of witnesses and jurors, it is significant that by that point the proceedings had been underway for three days, and the court had heard testimony from numerous witnesses. The court was within its discretion to require a resolution that was grounded in the facts developed by the witnesses who testified up to that point in the trial. The court may also exercise its discretion and reject a plea that develops out of brinkmanship, stratagems, or maneuvering for the most advantageous position. I would conclude that the court properly considered the pleas offered in this case, weighed them in relation to the interests of justice, and did not abuse its discretion when it declined to accept them.