[Cite as *State v. Nelson*, 2014-Ohio-2189.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 100439**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## LAMAR R. NELSON

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-574797

**BEFORE:** McCormack, J., S. Gallagher, P.J., and Rocco, J.

**RELEASED AND JOURNALIZED:** May 22, 2014

**ATTORNEY FOR APPELLANT**

Timothy F. Sweeney
The 820 Bldg., Suite 430
820 West Superior Ave.
Cleveland, OH 44113-1800


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: Ryan J. Bokoch
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, OH   44113

TIM McCORMACK, J.:

{¶1} Defendant-appellant, Lamar Nelson, appeals his conviction for drug trafficking and possession of criminal tools. For the reasons that follow, we affirm the decision of the trial court.

## Procedural History and Substantive Facts

{¶2} On June 26, 2013, the state filed a two-count information, charging Nelson with drug trafficking in violation of R.C. 2925.03(A)(2), in Count 1, and possession of criminal tools in violation of R.C. 2923.24(A), in Count 2. Both counts contained a forfeiture specification under R.C. 2941.1417(A) for $310 and plastic sandwich bags. The information stems from a traffic stop and subsequent arrest by Cuyahoga Metropolitan Housing Authority ("CMHA") police officers on May 24, 2013.

{¶3} The case proceeded to a jury trial on August 20, 2013. The jury returned a verdict of guilty on both counts. Nelson was subsequently sentenced to ten months incarceration on each count, to be served concurrently.

{¶4} Prior to the completion of the evidence, where only redirect and recross-examination remained of the final witness, the prosecutor informed the court that the state would accept a guilty plea to an amended indictment. The state indicated that it would amend Count 1 to incorporate the attempt statute of R.C. 2923.02, which would reduce the drug trafficking charge from a felony of the fifth degree to a misdemeanor of the first degree. In exchange for Nelson's guilty plea to the amended Count 1 as well as

the forfeiture specification, the state agreed to dismiss the remaining count for possession of criminal tools.

{¶5} The court then conducted a plea colloquy with Nelson. During the colloquy, Nelson admitted that he had smoked marijuana the prior evening. Stating that he was "reluctant to take a plea from a person who has used marijuana so recently," the trial judge declined to accept Nelson's plea. Trial resumed and, following the completion of the witness's testimony, the state rested. The defense presented no evidence.

{¶6} The state called two witnesses: Robert Vales, a detective with CMHA; and Thomas Williams, also a detective with CMHA. Both officers participated in Nelson's arrest. Detective Vales worked as a CMHA police officer for 18 years, including five years as a detective in the Crime Suppression Unit. He is trained in drug-related crimes involving CMHA. His training and experience includes observing street level drug sales on more than 1,000 occasions and conducting undercover drug purchases on more than 400 occasions. Detective Williams has worked as a CMHA police officer for 22 years, including 21 years as a detective with the Crime Suppression Unit. Detective Williams has received drug training from the Cleveland Police Department, the Cuyahoga County Sheriff's Department, the Federal Bureau of Investigations, and the Drug Enforcement Agency, and he has been involved in more than 1,500 drug arrests.

{¶7} Detective Vales testified that on May 24, 2013, he was working in an undercover police vehicle with his partner, Detective Williams, when he observed Nelson

making a right turn without using a turn signal. Detective Williams, who was driving the vehicle, also observed Nelson. The detectives then initiated a traffic stop.

{¶8} Detective Vales approached the passenger side of Nelson's vehicle while Detective Williams approached the driver side of the vehicle. Detective Vales noticed Nelson "moving around in the vehicle" as he approached. He testified that movement sometimes indicates a person's attempt to conceal items or retrieve a weapon. Detective Williams also observed "furtive movements."

{¶9} Detective Vales observed marijuana in the vehicle when he approached. The marijuana was packaged in small plastic bags in a Mentos container in plain view in the center console of the vehicle. He took possession of the container, which consisted of ten individually wrapped portions of marijuana. A forensic report later indicated the marijuana found in the bags amounted to 4.77 grams. The detective did not recover any items that could be used to smoke marijuana, such as rolling papers, a pipe, or a lighter. Detective Vales testified that in his experience, the recovered packaging was indicative of marijuana packaged for individual sale on the streets, in either multiple bags or single bags, depending on the sale. Detective Williams testified that typically drug traffickers carry nine or more bags of individually wrapped marijuana, as opposed to users who possess approximately one to five bags. He further testified that in his entire career working undercover as a user, he has never purchased ten bags of marijuana in a single transaction.

**{¶10}** After Detective Vales took possession of the marijuana, Detective Williams conducted a search of the vehicle and discovered one opened box of Good Sense plastic sandwich bags from the trunk. The detective testified that drug traffickers use plastic bags, or "baggies," to package drugs for sale. He explained that people who sell drugs tear off the corners of the baggies and place the drugs in the corners of the bags because one entire plastic bag is too big, noting that the corners of the bags are easier to sell and to conceal. He also stated that the manner in which the marijuana is wrapped is the most significant part in determining marijuana trafficking, demonstrating "how it appears for sale or shipping." Detective Williams did not recover any other items from the vehicle. He testified that had any personal items been discovered in the vehicle, he would have logged them on the "tow sheet" and left them in the vehicle.

**{¶11}** Detective Williams also discovered $310 in cash on Nelson, including $50 from his left front pants pocket and $260 from his wallet, which he seized, stating that "when we arrest people for trafficking in drugs we also seize money that's on their person or * * * in the vehicle." He testified that the amount of cash recovered was significant because drug traffickers typically have a large amount of cash on their person, while users typically carry "$20 or $40 in their pockets."

**{¶12}** Both detectives testified that the car Nelson was driving was clean and uncluttered. The detectives discovered paperwork in the vehicle that indicated the vehicle Nelson was driving was a rental car. Through their investigation, they determined that the car was rented by Nelson's mother. The detectives also learned that

Nelson did not have a valid driver's license. Detective Williams testified that the use of a rental car is significant in that "a lot of drug traffickers like to [use] rental cars" because they know their personal vehicles will be seized and the use of rental cars makes it more difficult to identify the vehicles "when we conduct surveillance on traffickers."

## Assignments of Error

I. Nelson's convictions of drug trafficking and possession of criminal tools are based upon evidence that is insufficient as a matter of law, in violation of Nelson's rights to due process and a fair trial as guaranteed by Article I, Sections 10 and 16 of the Ohio Constitution, and the Fourteenth Amendment to the United States Constitution.

II. Nelson's convictions of drug trafficking and possession of criminal tools are also against the manifest weight of the evidence.

III. The trial court abused its discretion in refusing to accept the plea agreement negotiated between Nelson and the State by which Nelson would have pleaded guilty to a misdemeanor.

IV. Nelson's trial counsel provided ineffective assistance of counsel by failing to seek a mistrial, or at least a continuance, when the trial court expressed its view that Nelson's recent marijuana use could have the effect of impairing Nelson's ability to assist with his defense and/or rendering him incompetent to make informed decisions about his case.

## Sufficiency of the Evidence

{¶13} In his first assignment of error, Nelson contends that the evidence upon which his conviction was based was insufficient as a matter of law. He moved for acquittal under Crim.R. 29, which the trial court denied.

**{¶14}** A Crim.R. 29(A) motion challenges the sufficiency of the evidence. When reviewing a challenge of the sufficiency of the evidence, an appellate court examines the evidence admitted at trial and determines whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* A sufficiency challenge requires us to review the record to determine whether the state presented evidence on each of the elements of the offense. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997).

**{¶15}** Nelson was convicted of drug trafficking in violation of R.C. 2925.03(A)(2), which provides that no person shall knowingly "prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance * * * when the offender knows or has reasonable cause to believe that the controlled substance * * * is intended for sale or resale by the offender or another person." With drug trafficking, the state must offer evidence that the defendant prepared the drugs for shipment, shipped the drugs, prepared the drugs for distribution, or distributed the drugs. *State v. Forte*, 8th Dist. Cuyahoga No. 99573, 2013-Ohio-5126, ¶ 8.

**{¶16}** Nelson was also convicted of possessing criminal tools in violation of R.C. 2923.24(A), which provides that "[n]o person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally." The criminal tools at issue consist of the plastic baggies discovered in the trunk of the vehicle and the $310 cash found on Nelson at the time of the arrest.

**{¶17}** Courts have consistently held that items such as plastic baggies and large sums of money are typically used in drug trafficking and may constitute circumstantial evidence of trafficking in violation of R.C. 2925.03(A)(2). *Forte* at ¶ 10, citing *State v. Rutledge*, 6th Dist. Lucas No. L-12-1043, 2013-Ohio-1482, ¶ 15; *State v. Kutsar*, 8th Dist. Cuyahoga No. 89310, 2007-Ohio-6990, ¶ 20. The elements of an offense may be established by direct evidence, circumstantial evidence, or both. *State v. Durr*, 58 Ohio St.3d 86, 568 N.E.2d 674 (1991). Circumstantial and direct evidence are of equal evidentiary value. *State v. Santiago*, 8th Dist. Cuyahoga No. 95333, 2011-Ohio-1691, ¶ 12.

**{¶18}** Here, the state provided sufficient circumstantial evidence of drug trafficking. The detectives recovered ten individual baggies of marijuana from the center console of the vehicle Nelson was driving, as well as an opened box of sandwich baggies discovered in the trunk. Detective Williams testified that drug traffickers typically carry nine or more bags of individually wrapped marijuana, as opposed to users who possess approximately one to five bags. He further testified that in his entire career working undercover as a user, he has never purchased ten bags of marijuana in a single

transaction. Furthermore, the detectives did not recover any items that could be indicative of a user of marijuana, such as rolling papers, a pipe, or a lighter.

{¶19} The evidence showed that the marijuana recovered from the vehicle was packaged in small individual baggies. Both detectives testified that drug traffickers use plastic baggies to package drugs for sale by cutting off the corners of the baggies and using the corners to store the marijuana. While Nelson argues that the amount of marijuana recovered was "minuscule," Detective Williams testified that the manner in which the marijuana is wrapped is the most significant part in determining marijuana trafficking because it demonstrates how the marijuana is prepared for sale or shipping.

{¶20} The evidence also showed that a large sum of money was recovered from Nelson. Detective Williams testified that such a large sum of money is a significant indication of drug trafficking. Additionally, the evidence showed that Nelson used a rented vehicle. The testimony established that the use of a rental car is significant indicia of drug trafficking because traffickers know that their own personal vehicles will be seized and the rental cars are more difficult to identify during police surveillance.

{¶21} Viewing the evidence in a light most favorable to the state, we find that any rational trier of fact could have found the essential elements of drug trafficking and possessing criminal tools proven beyond a reasonable doubt. Nelson's first assignment of error is overruled.

**Manifest Weight of the Evidence**

**{¶22}** In his second assignment of error, Nelson claims that his conviction for drug trafficking and possession of criminal tools is against the manifest weight of the evidence. In support of his claim, Nelson restates his argument outlined above.

**{¶23}** A defendant's claim that a conviction is against the manifest weight of the evidence entails "'a separate and distinct test that is much broader [than the test for sufficiency].'" *Forte*, 8th Dist. Cuyahoga No. 99573, 2013-Ohio-5126, ¶ 12, quoting *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 193. Unlike sufficiency of the evidence, manifest weight of the evidence raises a factual issue.

> "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."

*Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *Martin*, 20 Ohio App.3d 175, 485 N.E.2d 717.

**{¶24}** In evaluating a manifest weight claim, "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. When examining witness credibility, "the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986). A factfinder is free to believe all, some, or none of the

testimony of each witness appearing before it. *State v. Ellis*, 8th Dist. Cuyahoga No. 98538, 2013-Ohio-1184, ¶ 18.

**{¶25}** Here, for the reasons outlined above, we are unable to conclude that Nelson's conviction for drug trafficking and possessing criminal tools is against the manifest weight of the evidence. The evidence showed that while driving a rented vehicle, Nelson was in possession of ten individually wrapped packages of marijuana, one opened box of plastic baggies, and $310 in cash. The testimony established that the manner in which the marijuana was packaged, in small baggies, along with the opened box of baggies discovered in the trunk, indicated that the marijuana was for sale or distribution; the quantity of marijuana baggies recovered from Nelson was indicative of a drug trafficker; the large sum of money recovered from Nelson is typical of a drug trafficker; and the use of a rental car in combination with the above evidence also signifies a drug trafficker.

**{¶26}** Although Detective Vales testified that a user may purchase multiple baggies of marijuana on the street, Detective Williams testified that during his entire career involving more than 1,500 drug arrests, he has never purchased ten baggies in one purchase. We are mindful that a jury is free to believe all, some, or none of the trial testimony. Further, while admitting it was possible to purchase a larger quantity of baggies, Detective Williams testified that the manner in which the marijuana is packaged is the most significant indicia of drug trafficking.

**{¶27}** In light of the foregoing, we cannot find that this is the exceptional case in which the jury clearly lost its way. Accordingly, Nelson's second assignment of error is overruled.

### The Plea Agreement

**{¶28}** In his third assignment of error, Nelson contends that the trial court abused its discretion when it rejected the plea agreement to which Nelson and the state had entered.

**{¶29}** A trial court enjoys wide discretion in deciding whether to accept or reject a negotiated plea agreement. *State v. Caldwell*, 8th Dist. Cuyahoga No. 99166, 2013-Ohio-5017, ¶ 10. In fact, a defendant has no absolute right to have a guilty plea accepted. *Id.*

**{¶30}** The court's discretion, however, is not without limits. A trial court abuses its discretion when it rejects a plea agreement by relying on a blanket policy rather than considering the facts and circumstances of the particular case. *State v. Fitzgerald*, 188 Ohio App.3d 701, 2010-Ohio-3721, 936 N.E.2d 585, ¶ 11 (8th Dist.). "A blanket policy rejecting plea agreements results in rejections based on policy rather than reason." *Caldwell* at ¶ 11. Moreover, a court may abuse its discretion if it fails to provide reasons for refusing to accept the plea and its reasons cannot be ascertained from the record. *Id.* "A decision rejecting a plea bargain should be accompanied by the trial court's reasons therefor, absent facts and circumstances otherwise appearing which permit an evaluation

of the decision." *Akron v. Ragsdale*, 61 Ohio App.2d 107, 399 N.E.2d 119 (9th Dist.1978), at paragraph two of the syllabus.

**{¶31}** Here, prior to the completion of the evidence, where only redirect and recross-examination remained of Detective Williams, the prosecutor informed the court that the state would accept a guilty plea to an amended indictment. The state indicated that it would amend Count 1 to incorporate the attempt statute of R.C. 2923.02, which would reduce the drug trafficking charge from a felony of the fifth degree to a misdemeanor of the first degree. In exchange for Nelson's guilty plea to the amended Count 1 as well as the forfeiture specification, the state agreed to dismiss the remaining count for possession of criminal tools.

**{¶32}** The court then conducted a plea colloquy with Nelson. During the colloquy, Nelson admitted that he had smoked marijuana the prior evening. Stating that he was "reluctant to take a plea from a person who has used marijuana so recently," the trial judge declined to accept Nelson's plea. In explaining his reluctance, the court continued:

> I understand that anecdotally Mr. Nelson is probably not "high" right now, but I'm not sure it's worth the risk here, especially, by the way, because we have five minutes or so left of an evidentiary presentation here, give or take. I mean, you're done except for redirect and re-cross of Detective Williams * * *.

**{¶33}** When defense counsel advised the court that he believed Nelson was "clear headed" and was "functioning fine," the court noted that while it "accepted [counsel's] observations as accurate," it did not "want it to become a practice to accept pleas so close

in time to use of drugs. * * * [I]t can be mind altering." Finally, the court concluded that while it is not finding Nelson "necessarily incompetent to plea," it would prefer not to accept the plea in this case "from a person who has used marijuana as recently as about * * * 13 or so hours ago."

{¶34} In light of the foregoing, we cannot find that the trial court abused its discretion in refusing to accept Nelson's plea agreement. The court stated on the record its reasons for rejecting the plea, namely that Nelson had smoked marijuana approximately 13 hours prior to his appearance in court that morning, the drug could be "mind altering," and only "about five minutes or so" of redirect and recross of the final witness remained to be completed. While the court stated that it did not want to engage in a "practice" of accepting pleas so close in time to the use of drugs, we will not construe this statement as a blanket policy. The court provided objective reasons for rejecting the plea in Nelson's case. Given the trial court's articulated reasons for its decision in this case and the wide discretion a trial court enjoys in accepting or rejecting plea agreements, we do not find abuse of that discretion here. Nelson's third assignment of error is overruled.

### Ineffective Assistance of Counsel

{¶35} In his final assignment of error, Nelson claims that his trial counsel was ineffective. In order to establish a claim of ineffective assistance of counsel, a defendant must demonstrate: (1) his counsel was deficient in some aspect of his representation, and

(2) the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

**{¶36}** The first element requires a showing that counsel made errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. It necessarily requires that when a defendant complains of the ineffectiveness of counsel's assistance, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-688. A court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

**{¶37}** Regarding the second element, the defendant must demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373, citing *Strickland* at 694. Moreover, a defendant's failure to satisfy one element of the *Strickland* test negates the court's need to consider the other. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000), citing *Strickland* at 697.

**{¶38}** Here, Nelson argues that trial counsel was ineffective for failing to seek a mistrial or a continuance of the trial after the trial court expressed its concern that Nelson's recent marijuana use could have the effect of impairing his ability to assist with his defense. Although the trial court did address Nelson's drug use, which occurred approximately 13 hours prior to the start of that day's trial, we do not conclude that trial counsel was ineffective for failing to seek a mistrial for this reason.

**{¶39}** Subsequent to the court's decision not to accept Nelson's guilty plea, defense counsel objected to continuing with trial in light of the court's concern that Nelson may be impaired. In overruling counsel's objection, the court determined that trial should proceed:

> If Mr. Nelson is high, there is, as I've already noted, literally probably less than five minutes of evidentiary presentation left. Of course, it is preferable that a defendant be able to assist counsel in his defense. But one wonders how much assistance can be provided in the recross of Detective Williams that you have coming up, and apparently * * * you don't intend to call any [witnesses].

**{¶40}** Thereafter, the defense counsel admitted to the court that there was no evidence left to present on Nelson's behalf and there were few decisions remaining to be made. The trial proceeded with the redirect and recross of Detective Williams, and the state rested. Subsequently, the defense rested as well, presenting no evidence.

**{¶41}** In light of the foregoing, we do not find that counsel's representation fell below an objective standard of reasonableness. Nelson has failed to show that his voluntary drug use during the previous evening was grounds for mistrial the following day. Nothing in the record indicates that Nelson was, in fact, impaired during trial or that his actions of the previous evening impaired his ability to assist with his own defense. In fact, defense counsel advised the trial court that he believed Nelson was "functioning

fine." Counsel's failure to move for mistrial under these circumstances is therefore not deficient.

**{¶42}** Moreover, Nelson failed to present any evidence that the outcome of the trial would have been different absent counsel's alleged error. The record shows that the trial was almost entirely completed; only a small amount of evidence remained to be presented, which consisted of the redirect and recross of the final witness, Detective Williams; and Nelson presented no evidence on his own behalf. Nelson's ineffective assistance of counsel claim is therefore without merit. Nelson's fourth assignment of error is overruled.

**{¶43}** Judgment is affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, JUDGE

SEAN C. GALLAGHER, P.J., and
KENNETH A. ROCCO, J., CONCUR