[Cite as *State v. Jenkins*, 2023-Ohio-3622.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | Nos. 109421 and 109434 |
| v. | : | |
| MICHAEL JENKINS, ET AL., | : | |
| Defendant-Appellants. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REMANDED
**RELEASED AND JOURNALIZED:** October 5, 2023

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-14-585521-A and CR-14-585521-B

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Daniel T. Van, Assistant Prosecuting
Attorney, *for appellee.*

Russell S. Bensing; Cullen Sweeney, Cuyahoga County
Public Defender, and Erika Cunliffe, Assistant Public
Defender, *for appellants.*

EMANUELLA D. GROVES, J.:

{¶ 1} These cases were returned to this court after the Ohio Supreme Court

reversed and remanded for further proceedings the decisions in *State v. Dickerson*,

8th Dist. Cuyahoga No. 109434, 2022-Ohio-298 ("*Dickerson V*") and *State v.*

*Jenkins*, 2022-Ohio-297, 184 N.E.3d 896 (8th Dist.) ("*Jenkins V*"). These cases are consolidated for this appeal. These cases are remanded.

**Factual and Procedural History**

{¶ 2} A review of the factual and procedural history of this case is in order given its lengthy history. In 1994, J.R., who was 16 years old at the time, reported to the police that she had been raped by two men. Based on J.R.'s information, the police were able to locate and arrest the two men, Oscar Dickerson ("Dickerson") and Michael Jenkins ("Jenkins") in the hotel room where the assault occurred. Police learned that the hotel room was obtained by Jerry Polivka ("Polivka") and that he, Dickerson, and Jenkins were together when they first encountered J.R. on the street. Although police obtained an address for him, Polivka was never arrested. Evidence was collected at the crime scene, and a rape kit was collected from J.R.

{¶ 3} There was minimal investigation done at the time and the case was essentially closed until August 24, 2012, when J.R.'s rape kit was submitted to BCI for DNA testing. Both Dickerson's and Jenkins's DNA were found on evidence inside the kit. On May 15, 2014, Dickerson and Jenkins were each indicted on two counts of rape; two counts of complicity to commit rape and one count of kidnapping. Polivka passed away during the intervening period.

{¶ 4} A week prior to trial, Dickerson's attorney filed a motion to dismiss based on preindictment delay. The trial court declined to consider the motion finding it was untimely. Jenkins's attorney did not file a similar motion.

{¶ 5} After a jury trial, each defendant was convicted of one count of rape, one count of complicity to commit rape, and one count of kidnapping. The jury found both defendants not guilty of one count of rape and one count of complicity to commit rape.

{¶ 6} On December 29, 2014, Jenkins was sentenced to eight years in prison on each count to run concurrently. Dickerson was sentenced to five years in prison on each count to run concurrently. Both defendants were sentenced pursuant to Am.Sub.H.B. No. 86, which became effective on September 30, 2011, and was in effect at the time of sentencing.

{¶ 7} The state appealed the sentences in both cases, arguing that the defendants should have been sentenced according to the law in effect in 1994 when the crime occurred. Jenkins did not cross-appeal. This court overruled the state's appeal to Jenkins's sentence, finding that Am.Sub.H.B. No. 86 applied and the sentence was appropriate. *State v. Jenkins*, 8th Dist. Cuyahoga No. 102462, 2015-Ohio-4583 ("*Jenkins I*").

{¶ 8} Dickerson cross-appealed raising three assignments of error: (1) he received ineffective assistance of counsel when his counsel filed an untimely motion to dismiss; (2) the trial court erred in denying the motion to dismiss; and (3) the convictions were not supported by sufficient evidence.

{¶ 9} This court found that the trial court did not err in denying Dickerson's untimely motion.[1] However, we found that Dickerson did receive ineffective assistance of counsel because the motion to dismiss had a high probability of being granted. Based on this finding, Dickerson's convictions were reversed and the case remanded back to the trial court. The state's assignment of error was deemed moot and overruled. Dickerson's third assignment of error was deemed moot. *State v. Dickerson*, 8th Dist. Cuyahoga No. 102461, 2017-Ohio-177 *("Dickerson II")*.

{¶ 10} Jenkins filed a delayed appeal after the ruling in *Dickerson II*. He raised three assignments of error: (1) he received ineffective assistance of counsel when his lawyer failed to file a motion to dismiss based on preindictment delay; (2) the trial court erred by not dismissing the case for preindictment delay; and (3) sufficiency of the evidence. Based on the ruling in *Dickerson II*, we reversed Jenkins's convictions finding ineffective assistance of counsel. Jenkins's remaining assignments of error were deemed moot, and the case was remanded back to the trial court "for further proceedings consistent with this opinion." *State v. Jenkins*, 2018-Ohio-483, 106 N.E.3d 216, ¶ 46 (8th Dist.) *("Jenkins II")*.

---

[1] The state appealed this court's original decision, *State v. Dickerson*, 8th Dist. Cuyahoga No. 102461, 2016-Ohio-807, 60 N.E.3d 699 ("*Dickerson I*"), arguing that the incorrect standard was used in examining the preindictment delay issues. The Ohio Supreme Court agreed and reversed and remanded the decision to this court. *State v. Dickerson*, 146 Ohio St.3d 1493, 2016-Ohio-5585, 57 N.E.3d 1172. On remand, this court used the correct standard and came to a similar result. *State v. Dickerson*, 8th Dist. Cuyahoga No. 102461, 2017-Ohio-177 ("*Dickerson II*"). In the original appeal, this court vacated the convictions, and explicitly stated "Case remanded to the trial court to vacate appellant's convictions." *Dickerson I* at ¶ 54. In the later decision, this court reversed the convictions and remanded but did not include any further directive to the trial court.

{¶ 11} Once back before the trial court, both defendants filed motions to dismiss for preindictment delay. After a hearing, the trial court found that the defendants had failed to establish that they were prejudiced by the delay. The state then moved to reinstate the convictions. The trial court denied the motion. Both parties appealed. All the appeals were dismissed for lack of a final appealable order.[2]

{¶ 12} The state then filed a motion asking the trial court to reconsider its decision on the motion to reinstate the convictions. The trial court agreed and reinstated Jenkins's and Dickerson's convictions. The defendants appealed arguing (1) that the trial court erred when it denied the motions to dismiss for preindictment delay; and (2) that the trial court erred when it reinstated the defendants' convictions after those convictions were reversed in the court of appeals. *Dickerson V*; *Jenkins V*.

{¶ 13} On appeal, this court found that the trial court erred when it found that the defendants did not establish prejudice. We remanded the case back to the trial court to determine whether the state had a justifiable reason for the delay. Based on the foregoing, we determined that the second assignment of error raised by each defendant was moot. The state appealed to the Ohio Supreme Court. The court summarily reversed our decision on the basis of *State v. Bourn*, Slip Opinion No. 2022-Ohio-4321 and remanded the case back to this court for further

---

[2] *State v. Dickerson*, 8th Dist. Cuyahoga No. 107419, 2019-Ohio-2736; *State v. Dickerson*, 8th Dist. Cuyahoga No. 107520, 2019-Ohio-2738; ("*Dickerson III* and *IV*", respectively) *State v. Jenkins*, 8th Dist. Cuyahoga No. 107518, 2019-Ohio-2737; *State v. Jenkins*, 8th Dist. Cuyahoga No. 107409, 2019-Ohio-2735. ("*Jenkins III* and *IV*", respectively).

proceedings. *State v. Dickerson*, Slip Opinion No. 2022-Ohio-4732; *State v. Jenkins*, Slip Opinion No. 2022-Ohio-4731.

{¶ 14} The Ohio Supreme Court's decisions overruled our finding that the defendants established they were prejudiced by the period of preindictment delay. Defendants have briefed the first assignment of error and asked this court to address whether prejudice was established. However, we must follow the mandate of the superior court; thus, the first assignment of error in *Dickerson V* and *Jenkins V* has been settled. Therefore, we examine the second assignment of error raised by both defendants: whether the trial court erred when it reinstated the defendants' convictions.

**Reinstated Convictions**

{¶ 15} Defendants argue that the trial court did not have authority to reinstate their convictions because this court's mandate did not explicitly permit that action. We agree.

{¶ 16} When this court reversed the convictions in *Dickerson* and *Jenkins II*, the cases were remanded for further proceedings consistent with those opinions. The state appealed those decisions to the Ohio Supreme Court, which declined jurisdiction. *State v. Dickerson*, 150 Ohio St.3d 1452, 2017-Ohio-8136, 83 N.E.3d 938; *State v. Jenkins*, 153 Ohio St.3d 1442, 2018-Ohio-2834, 102 N.E.3d 499. When that happens, the court of appeals' decision becomes the law of the case. *Hubbard ex rel. Creed v. Sauline*, 74 Ohio St.3d 402, 405, 659 N.E.2d 781 (1996). The law of the case is a judicially created rule, which states that a decision of a reviewing court

in a case "remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." *Id.*, quoting *Nolan v. Nolan*, 11 Ohio St.3d 1, 3-4, 462 N.E.2d 410, 412-413 (1984). Therefore, once the Supreme Court declined jurisdiction, this court's reversal of the convictions due to ineffective assistance of counsel became the law of the case.

{¶ 17} When a case is remanded, the appellate court provides a mandate for how the lower court should proceed. An appellate mandate functions in two ways: 1) "it vests the lower court on remand with jurisdiction"; and 2) "it gives the lower court on remand the authority to render judgment consistent with the appellate court's judgment." *State v. Carlisle*, 8th Dist. Cuyahoga No. 93266, 2010-Ohio-3407, ¶ 16. The trial court is limited to the remanded issues only and not those that the mandate put to rest. *Id.* "[T]he mandate rule 'provides that a lower court on remand must implement both the letter and the spirit of the appellate court's mandate and may not disregard the explicit directives of that court.'" *Id.* quoting, *State v. Larkins*, 8th Dist. Cuyahoga No. 85877, 2006-Ohio-90, ¶ 31.

{¶ 18} While *Dickerson II's* mandate simply stated reversed and remanded, it was implicit in the ruling that the trial court is mandated to proceed with the case in a manner consistent with this court's opinion. *Jenkins II*'s mandate required the trial court to proceed in a manner consistent with the decision. The reversal of the convictions was settled and final. Absent instructions from this court to the contrary, the trial court had no authority to address the portion of our decision that was settled and final. *Carlisle* at ¶ 16.

{¶ 19} The mandate did not include instructions that would permit the court to reinstate the convictions. "[A] deviation from an appellate mandate can only occur when external circumstances have rendered that mandate void or moot." *Carlisle*, 8th Dist. Cuyahoga No. 93266, 2010-Ohio-3407, ¶ 23. There was no intervening Ohio Supreme Court decision nor was the trial court's own action on the motion a basis for overturning this court's decision to reverse the defendants' convictions.

{¶ 20} Furthermore, at the very least, the decision to deny the motion to dismiss reopened the assignments of error rendered moot by our decision in *Dickerson* and *Jenkins II*. A trial court cannot reimpose a conviction and sentence after an appellate reversal when there were outstanding issues in the appeal. *State v. Dzelajlija*, 136 Ohio St.3d 346, 2013-Ohio-3724, 995 N.E.2d 1172, ¶ 12. The conviction had not become final, and the sentence could not be reimposed. *Id.* at ¶ 5, 12. In the instant case, when the trial court determined that the defendants were not prejudiced by the period of preindictment delay, that decision only addressed one of the issues raised on appeal. The remaining assignments of error became relevant and pending, precluding the trial court from reinstating the convictions.

{¶ 21} Based on the foregoing, we find that the trial court erred when it reinstated the convictions; however, that does not end our review.

**Effect of the Ohio Supreme Court's Ruling on the Current Case**

{¶ 22} When the Ohio Supreme Court overruled our decisions in *Dickerson* and *Jenkins V,* it impliedly overruled our decisions in *Dickerson* and *Jenkins II*.

*Dickerson* and *Jenkins II* considered the possibility of success of motions that were never litigated in the trial court. On the remand, the trial court allowed the parties to address the motions to dismiss and found that the defendants failed to establish they were prejudiced by the period of preindictment delay. On appeal this court disagreed, in a two-to-one decision. The Supreme Court however has firmly, and with finality, agreed with the trial court. That decision is now the law of the case and must be considered as we move forward. "[T]he decision of a reviewing court in a case remains the law of the case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." *Nolan*, 11 Ohio St.3d 1, 3, 462 N.E.2d 410 (1984).

{¶ 23} *Dzelajlija*, 136 Ohio St.3d 346 is a case that is very similar to this one. The case was subject to multiple appeals. After the court of appeals' second reversal of the convictions, the case remained pending for almost a year. Prior to the new trial date, the Ohio Supreme Court issued a decision that overruled the legal basis supporting the reversal of Dzelajlija's convictions. After a hearing on the effect of that case, the trial court reinstated the convictions. The court of appeals reversed the convictions, finding that the Supreme Court's decision happened after the court of appeals case had become the law of the case. Accordingly, it found that the decision had no effect, and reversed and remanded the trial court's decision reinstating the convictions. The state appealed the decision to the Supreme Court.

{¶ 24} The Ohio Supreme Court reversed the appellate court's decision. The court found that the intervening case did have effect; however, the trial court did not

have authority to reinstate the convictions.  The court opined that the trial court lacked authority because there were outstanding issues on appeal.  The appellate court had reversed the conviction on one assignment of error, finding that the second assignment of error, which challenged the manifest weight of the evidence, was rendered moot.  Ultimately, the Supreme Court reversed and remanded the case back to the court of appeals with an order to rule on the manifest weight argument. We apply the same analysis here.  We have already addressed the assignments of error in *Dickerson* and *Jenkins V*.  We must also address the moot assignments of error in *Dickerson* and *Jenkins II*.  Those assigned errors are as follows:

### State's Assignment of Error In *Dickerson II*

Because Defendant-appellee committed his offense prior to July 1, 1996, the trial court erred when it sentenced Defendant-appellee under sentencing provisions effective July 1, 1996 and H.B. 86 provisions effective September 30, 2011.

### Dickerson's Third Assignment of Error in *Dickerson II*

The state failed to meet its burden where there was not sufficient evidence of force or threat of force to sustain a conviction for rape, complicity to rape, and kidnapping pursuant to R.C. 2907.02(A)(2), 2905.02(A)(4) and 2923.03(A)(2).

### Jenkins's First and Third Assignments of Error in *Jenkins II*

The trial court committed plain error when it failed to dismiss the case for preindictment delay.  The evidence was insufficient to show the element of force or threat of force in rape, complicity to rape, and kidnapping.  Fifth and Fourteenth Amendments to the United States Constitution, Article I, Section 10 of the Ohio Constitution.

**The State's Assignment of Error**

{¶ 25} We summarily overrule the state's assignment of error pursuant to *State v. Thomas*, 148 Ohio St.3d 248, 2016-Ohio-5567, 70 N.E.3d 496, which found that H.B. 86 would apply to the facts of this case.

**Jenkins's First Assignment of Error**

{¶ 26} Similarly, due to the Ohio Supreme Court's ruling in *State v. Jenkins*, Slip Opinion No. 2022-Ohio-4731, which found that appellant was not prejudiced by the preindictment delay, we summarily overrule Jenkins's first assignment of error.

**Dickerson and Jenkins's Third Assignment of Error**

{¶ 27} In their third assignment of error, both Dickerson and Jenkins argue that their convictions were not supported by sufficient evidence because the evidence did not establish the element of force or threat of force.

{¶ 28} Defendants suggest that J.R. did not testify about force or threat of force and therefore failed to establish that element of the charges. Defendants argue that "the evidence must establish beyond a reasonable doubt that the defendant purposely created the belief in the victim that physical force would be used to overcome the resistance, not whether the victim feared what the defendant might do if she or he did resist." Dickerson's Brief on Cross-Appeal p. 26.[3]

---

[3] Jenkins argued, "Here, the state proved only that J.R. got in a car with [Jenkins] and [Dickerson], drove around for a few hours, accepted drugs from them, had sex with them and left. And while she said she felt "scared," there is no evidence [Jenkins] ever purposefully threatened her."

## J.R.'s Testimony at Trial

{¶ 29} J.R. testified that she was approached by three men in a car. They called out to her several times, and she waved them off, but they continued to circle and follow her. Eventually, the car stopped and one of the men approached her. He was bigger than her, and she was not sober, so she froze. He offered to give her a ride home. J.R. declined and told him she was almost home and did not need a ride. The man became more insistent and, although she did not believe they intended to take her home, J.R. did not think she had any choice so she got into the car. She described the three males as two black males who appeared a few years older than her and a frail older white male. She told them where she lived. When they passed her street, she spoke up and told them that was where she lived. They ignored her and kept driving and someone told her to shut up. She couldn't jump out of the car from the back seat because one of the younger men was back there with her. They took her to a hotel and the two younger guys, Dickerson and Jenkins, escorted her out of the car and took her to a room. She tried to escape by telling them she wanted to go outside to smoke, but one of the guys went with her.

{¶ 30} Back in the hotel room, Jenkins followed her into the bathroom and initiated intercourse with her. J.R. told him she had a boyfriend and that she might be pregnant, but it had no effect. She tried to resist by pushing away, but she acknowledged that she never said no, or hit, slapped, screamed, or kicked. She did not think she stood a chance against the two of them who were both taller and bigger.

She was a 5′ 5″, 130 pound 16-year-old. Dickerson was tall and broad while Jenkins was taller than Dickerson but thin in comparison.

{¶ 31} Afterwards J.R. put on her clothes and exited the bathroom. Dickerson then approached her, put her on the bed, and started removing her clothes. She did not say anything at that time, she lay there, crying, and did not respond.

**Sufficiency Review**

{¶ 32} When examining the sufficiency of the evidence, we must

> examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds as stated in State v. Smith,* 80 Ohio St.3d 89, 102, 684 N.E.2d 668 (1997), fn. 4.

{¶ 33} The question is whether the state met its burden of production at trial. *State v. Toby*, 8th Dist. Cuyahoga No. 106306, 2018-Ohio-3369, ¶ 19, citing *State v. Givan*, 8th Dist. Cuyahoga No. 94609, 2011-Ohio-100, ¶ 13. To meet the burden of production a party must "produce sufficient evidence to make out a prima facie case." *State v. Petway*, 2020-Ohio-3848, 156 N.E.3d 467, ¶ 47 (11th Dist.). "A reviewing court is not to assess 'whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction.'"

*State v. Nelson*, 8th Dist. Cuyahoga No. 100439, 2014-Ohio-2189, ¶ 14, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997).

{¶ 34} A conviction may not be overturned under this standard "unless we find that reasonable minds could not reach the conclusion [made] by the trier of fact." *State v. Treesh*, 90 Ohio St.3d 460, 484, 739 N.E.2d 749 (2001).

{¶ 35} Retrial is barred if it is determined that a conviction is based on legally insufficient evidence. *State v McFarland*, 162 Ohio St.3d 36, 2020-Ohio-3343, 164 N.E.3d 316, ¶ 23. A reversal based on the insufficiency of the evidence has the same effect as a verdict of not guilty "because it means that no rational factfinder could have voted to convict the defendant." *Id.* at ¶ 23, quoting *Thompkins* at 387.

{¶ 36} In order to prove rape under R.C. 2907.02(A)(2), the state needed to establish that the defendants did engage in sexual conduct with J.R. by purposely compelling her to submit by force or threat of force. In order to prove complicity to commit rape, the state needed to establish that the defendants did purposely aid or abet a codefendant in committing a violation of rape under R.C. 2907.02(A)(2); and to establish kidnapping, the state needed to prove that the defendants, by force, threat, or deception, purposely removed J.R. from the place where she was found or restrained the liberty of her for the purpose of engaging in sexual activity.

{¶ 37} Because the defendants only challenge the element of force or threat of force, we will confine our review to that issue. "Force" in both rape and kidnapping is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). "The amount

of force needed to commit either crime depends on the age, size, and strength of the parties and their relation to each other." *Ohio v. Redmond*, 8th Dist. Cuyahoga No. 111138, 2022-Ohio-3734, ¶ 22.

> A defendant purposely compels another to submit to sexual conduct by force or threat of force if the defendant uses physical force against that person, or creates the belief that physical force will be used if the victim does not submit. A threat of force can be inferred from the circumstances surrounding sexual conduct * * *.

*State v. Schaim*, 65 Ohio St.3d 51, 55, 600 N.E.2d 661 (1992).

{¶ 38} In the instant case, J.R. was faced with three men, initially, who followed her in their car, called out to her, and refused to listen when she told them she did not need a ride. Then, once escorted into the car, they refused to stop when she showed them where her street was located. At the hotel, Polivka secured the hotel room while Jenkins and Dickerson stayed in the car with J.R. Both defendants escorted her into the hotel room. When she tried subterfuge and asked to smoke outside to attempt an escape, the defendants would not let her go alone. Finally, when Jenkins initiated sex, she verbally protested and then shoved him, but did not engage in a more forceful fight because she did not stand a chance against two men of that size compared to her. After that, her will subdued, she no longer protested or fought, but sent her mind elsewhere for the remainder of the assault.

{¶ 39} In a sufficiency analysis, we determine whether the witness or witnesses testified to each element of the offense or offenses charged. "The testimony of one witness, if believed by the factfinder, is enough." *In re C.A.*, 8th Dist. Cuyahoga No. 102675, 2015-Ohio-4768, ¶ 51. Viewing the evidence in a light

most favorable to the prosecution, we find that a rational trier of fact could conclude beyond a reasonable doubt that Jenkins and Dickerson compelled J.R. to go with them and engage in each sex act by force sufficient to overcome her will and that the rape, complicity, and kidnapping convictions were therefore supported by sufficient evidence.

{¶ 40} Accordingly, the third assignment of error in each case is overruled.

{¶ 41} Based on the foregoing, the convictions and sentences previously reversed are reinstated.

{¶ 42} Judgment: convictions reinstated with original sentences. Case remanded to the trial court for execution of this order.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

SEAN C. GALLAGHER, P.J., CONCURS;
MARY EILEEN KILBANE, J., CONCURS IN PART AND DISSENTS IN PART
(WITH SEPARATE OPINION)

MARY EILEEN KILBANE, J., CONCURRING IN PART AND DISSENTING IN PART:

{¶ 43} I respectfully concur with the majority's initial conclusion that the trial court previously had no authority to reinstate Dickerson's and Jenkins's convictions. I respectfully dissent, however, from the portion of the majority's opinion that addresses the prior moot assignments of error and determines the trial court now should reinstate the original convictions and sentences. I would remand the cases to the trial court for a new trial.

{¶ 44} While I acknowledge the majority's reference to the Ohio Supreme Court's agreement with the trial court as to the issue of preindictment delay, I maintain that the defendants were prejudiced by preindictment delay, as this court has held repeatedly over the course of their cases. Moreover, the trial court's initial improper reinstatement of the convictions in this case, and the subsequent appellate proceedings in this court and the Ohio Supreme Court, have only served to further delay and ultimately deny justice for Jenkins and Dickerson. This is supported by the fact that after issuing numerous opinions in this case, and resolving issues of ineffective assistance of counsel and preindictment delay, this appeal is now — nearly a decade after Jenkins and Dickerson were convicted — analyzing whether the convictions were supported by sufficient evidence.

{¶ 45} I am familiar with the facts of this case and the evidence presented at the appellants' 2014 criminal trial. I cannot fully concur with the majority's decision to reinstate the convictions and sentences based on the multiple missteps

throughout the administration of justice.  For these reasons, I respectfully concur in part and dissent in part.